**AFFIDAVIT OF SPECIAL AGENT DOMINIC GROSS**
**IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Dominic Gross, being duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I have been a Special Agent of the Federal Bureau of Investigation ("FBI") since July 2015. I am currently assigned to the Economic Crimes Squad in the FBI's Boston Field Office, where I investigate possible violations of federal law, including wire fraud, bank fraud, money laundering, intellectual property rights violations, bankruptcy fraud, and mortgage fraud. I have received on-the-job training as well as FBI-sponsored training related to these types of investigations, and I have participated in the execution of search, seizure, and arrest warrants related to criminal investigations. My investigations and training have included the use of surveillance techniques, confidential informants, and court-authorized interception of wire and electronic communications.

2.      As an FBI Special Agent, I am empowered by law to investigate violations of the laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants issued under authority of the United States.

3.      I am currently conducting an investigation of DAVE GUILLAUME ("GUILLAUME"), LINDSLEY GEORGES ("GEORGES"), and others for violations of certain federal laws, including bank fraud, wire fraud, money laundering, and aggravated identity theft.

4.      I make this affidavit in support of a criminal complaint charging GUILLAUME and GEORGES with conspiracy to commit bank fraud, in violation of 18 U.S.C. §1349. Specifically, as set forth below, I have probable cause to believe that, beginning no later than in or around August 2017 and continuing until no earlier than in or about January 2018, GUILLAUME and GEORGES conspired with others to execute a scheme to fraudulently obtain money under the

custody and control of Santander Bank, N.A. ("Santander Bank") and TD Bank ("TD Bank"), both of which at all relevant times were financial institutions as defined in 18 U.S.C. §20.

5.      The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses.  This affidavit is intended to show merely that there is probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE TO BELIEVE THAT A FEDERAL
## CRIME WAS COMMITTED BY GUILLAUME AND GEORGES

6.      GUILLAUME and GEORGES are both currently residents of Massachusetts.

7.      Based on my investigation, including interviews with the victims set forth below, I am aware that the scheme generally involved using fraudulent identification documents to obtain funds, usually in the form of bank checks, from the accounts of real Santander Bank and TD Bank customers.  GUILLAUME and GEORGES' role in the scheme and conspiracy was to negotiate the fraudulently-obtained bank checks at other financial institutions.

8.      With respect to the transactions described below, I have reviewed the referenced bank surveillance photos, as well as the bank records concerning each of the transactions.  I have compared the bank surveillance photos involving transactions by GUILLAUME and GEORGES with known photographs of GUILLAUME and GEORGES, respectively.  Based on that, I believe that GUILLAUME and GEORGES were the persons who effected the transactions as described below.

### The fraudulent Santander Bank transactions

9.      On or about December 30, 2017, an unidentified man, Co-conspirator 1 ("CC-1"), entered a Santander Bank branch located at 51 Pleasant Street in Weymouth, Massachusetts.  CC-1 approached a teller, and, according to the teller, identified himself as a Santander Bank customer

using a fraudulent ID in the customer's name, hereinafter referred to as "Victim 1." The teller was aware at the time that CC-1 was not, in fact, Victim 1. The teller admitted in February 2018 to being a knowing participant in the two Santander Bank transactions described in this section, and having received payment for doing so. The information she has provided concerning the involvement of others and herself has been corroborated by bank records, information obtained by a consensual search of her phone, and other investigation. The teller's criminal history involved a 2013 juvenile shoplifting charge, the disposition of which I have been unable to obtain, and a February 2019 Massachusetts state charge of assault and battery, which has not been resolved.

10.     CC-1 requested two official bank checks – one for $230,000 payable to Austiria Solutions Inc., and a second for $120,000 payable to Banner Seil Seltzer Reair Corp. – drawn on two of Victim-1's Home Equity Line of Credit ("HELOC") accounts at Santander Bank, accounts ending in 1057 ("SANT-1057") and 8717 ("SANT-8717"). CC-1 also requested a cash withdrawal of $9,000 from the SANT-1057 account. The teller processed both official checks and the cash withdrawal. After completing these fraudulent transactions, CC-1 took the checks and the cash and departed the branch.

11.     Victim 1's husband and co-account holder was interviewed and confirmed that neither he nor his wife had authorized anyone to withdraw the funds described above, nor had either ever been to the bank branch where the transactions took place.

12.     On or about January 13, 2018, a second unidentified man, Co-conspirator 2 ("CC-2") entered the same Santander Bank branch located at 51 Pleasant Street in Weymouth, Massachusetts. CC-2 approached the same teller who handled the transaction described above, and identified himself as a Santander Bank customer using a fraudulent driver's license in the customer's name, hereinafter referred to as "Victim 2." The teller was aware at the time that CC-

2 was not, in fact, Victim 2.  CC-2 requested two official bank checks – one for $280,000 payable to Austria Solutions, Inc, and a second for $167,325 payable to Cf Foresight Construction Llc – drawn on Victim-2's Home Equity Line of Credit ("HELOC") account at Santander Bank, account ending in 4111 ("SANT-4111").  CC-2 also requested a cash withdrawal of $9,000 from the SANT-4111 account.  The teller processed both official checks and the cash withdrawal.  After completing these fraudulent transactions, CC-2 took the checks and the cash and departed the branch.

13.     Victim 2 was interviewed and confirmed that the transactions in his account were fraudulent, and that he had not authorized anyone to withdraw the funds.

GUILLAUME and GEORGES negotiate three of the Santander Bank checks

14.     On or about August 15, 2017, a business bank account was opened at a Bank of America, N.A. branch in Everett, Massachusetts, in the name Austria Solutions, Inc., with a business address of 451 NE 160th Ter., Miami, FL 33162-4338.  The account number ended with 3087 ("BOA-3087").  On the account opening documents, GEORGES was listed as the President, was an authorized signer on the account, and used for identification a Massachusetts driver's license ending in 2448 ("MA-2448") with an expiration date of October 2020.  My review of Massachusetts Registry of Motor Vehicles records indicates MA-2448 to be GEORGES's true driver's license.

15.     On or about January 2, 2018, GEORGES deposited the $230,000 bank check payable to Austiria Solutions Inc., which had been procured with funds fraudulently obtained by CC-1 from Victim 1's Santander Bank account, into the Austria Solutions, Inc. account BOA-3087.  On or about January 16, 2018, GEORGES deposited the $280,000 bank check payable to Austria Solutions, Inc, which had been procured with funds fraudulently obtained by CC-2 from

Victim 2's Santander Bank account, into the BOA-3087 account.  Bank of America surveillance cameras captured GEORGES depositing the two checks.

16.     Between January 9, 2018 and January 18, 2018, GEORGES made approximately six cash withdrawals from the BOA-3087 account at six different branch offices, totaling approximately $212,000.  Bank of America surveillance cameras captured GEORGES making each of the cash withdrawals.

17.     On or about December 31, 2017, GUILLAUME opened a business bank account at a TD Bank branch in Cambridge, Massachusetts, in the name Banner Seil Seltzer Reair LLC, with a business address of 61 Tucker Street, Lynn, MA 01904, account number ending in 7535 ("TDBank-7535").  In opening the account, GUILLAUME identified himself as Jeffrey Seltzer, the owner and operator of Banner Seil Seltzer Reair LLC, a commercial printing business.  TD Bank surveillance cameras captured GUILLAUME opening the account.

18.     On or about December 31, 2017, GUILLAUME deposited the $120,000 bank check payable to Banner Seil Seltzer Reair Corp., which had been procured with funds fraudulently obtained by CC-1 from Victim 1's Santander Bank account, into the TDBank-7535 account.   TD Bank surveillance cameras captured GUILLAUME depositing the check.  The check was endorsed with what purports to be a signature of Jeffrey Seltzer.

19.     Between January 11, 2018 and January 16, 2018, withdrawals totaling $115,500 in cash and checks were made from the TDBANK-7535 account.  GUILLAUME made five cash withdrawals from the TDBANK-7535 account at four different branch offices, totaling approximately $46,500.  On one of those occasions, GUILLAUME also withdrew $9,000 from the TDBANK-7535 account to purchase a bank check payable to another individual, who has not

been identified by investigators.  TD BANK surveillance cameras captured GUILLAUME making each of the cash withdrawals.

The fraudulent TD Bank transactions

20.     On or about December 21, 2017, an unidentified man, Co-conspirator 3 ("CC-3") entered a TD Bank branch located at 350 Westford Street, Lowell, Massachusetts, and identified himself to a teller as a TD Bank customer, hereinafter referred to as "Victim-3."  CC-3 requested and obtained an official bank check—in the amount of $157,243.26 payable to Lincorn Forsight Construction Inc—drawn on Victim-3's HELOC account ending in 5368 ("TDBANK-5368"). After completing this fraudulent transaction, CC-3 took the check and departed the branch.

21.     On or about December 29, 2017, an unauthorized online transfer in the amount of $247,987 was made from Victim 3's HELOC account to a business checking account in the name of Victim-3's company ("TDBANK-9872").   On January 7, 2018, an unidentified man, Co-conspirator 4 ("CC-4") entered a TD Bank branch located at 230 S. Main Street, Middleton, Massachusetts, and identified himself to a teller as Victim 3.  CC-4 requested and obtained an official bank check—in the amount of $180,000 payable to Lincorn Forsight Constructions LLC— drawn on Victim-3's business checking account TDBANK-9872.   CC-4 also requested and obtained a cash withdrawal of $9,000 from the same account.  After completing these fraudulent transactions, CC-4 took the check and the cash and departed the branch.

22.     Victim 3 was interviewed and confirmed that the transactions described above were fraudulent, and that neither he nor any other signers on the accounts had authorized anyone to withdraw the funds.

## GUILLAUME and GEORGES negotiate the TD Bank checks

23.     On or about December 15, 2017, a business bank account was opened at a Santander Bank branch in Lynn, Massachusetts located at 35 Market Square, in the name Lincorn Foresight Construction Inc.   The account number ended with 5591 ("SANT-5591"). GUILLAUME opened the account using a California driver's license ending in 0671, in the name of James B. Jackson, but bearing GUILLAUME's photograph ("CA-0671").

24.     On or about December 22, 2017, GEORGES deposited the $157,243.26 bank check payable to Lincorn Forsight Construction Inc, which had been procured with funds fraudulently obtained by CC-3 from Victim 3's TD Bank account, into the Lincorn Foresight Construction Inc. account SANT-5591.   On or about January 8, 2018, GUILLAUME deposited the $180,000 bank check payable to Lincorn Forsight Constructions LLC, which had been procured with funds fraudulently obtained by CC-4 from Victim 3's TD Bank account, into the SANT-5591 account. The $157,243.26 and $180,000 checks each bore what purported to be the signature of "James Jackson" on the back.   Santander Bank surveillance cameras captured GEORGES and GUILLAUME depositing the checks.

25.     Between December 26, 2017 and January 3, 2018, a total of approximately $69,700 in cash withdrawals and bank check purchases were made from the SANT-5591 account, all utilizing CA-0671 as identification to authenticate the transactions.   The bank checks were made payable to individuals who have not been identified by investigators.    Additionally, a $78,350 check was written on and debited from the account, and I am not aware of the circumstances surrounding the negotiation of that check.

GUILLAUME and GEORGES interviews

26.     On March 7, 2018, GUILLAUME, after being advised of his Miranda rights, was interviewed by law enforcement officers at a police station in Cambridge.  The interview was recorded on video.  During the interview, GUILLAUME admitted the following, among other things:  1) he was recruited to open bank accounts, deposit checks, and withdraw funds from those accounts by a person he identified as "Bryan;"  2) he opened bank accounts in the names of "Lincorn" and "Banner Seltzer;"  3) in opening the accounts and effecting transactions in them, he used identification documents which were provided to him by "Bryan" in the names James Jackson and Jeffrey Seltzer; 4) he was paid in cash to open accounts, deposit checks, and withdraw funds; and 5) GEORGES is his friend.

27.     GUILLAUME consented to the search of his cellphone, which revealed multiple text messages with GEORGES, including about available balances in bank accounts, and whether a particular check had "cleared yet."

28.     On March 20, 2018, GEORGES was interviewed by investigators.  During the interview, GEORGES admitted the following, among other things:  1) he met "Bryan" at a party; 2) Bryan offered to pay GEORGES to use GEORGES' bank account to deposit a check; 3) GEORGES agreed and gave Bryan the account number for the Austria Solutions bank account; 4) Austria Solutions is a legitimate IT consulting business; 5) GEORGES deposited checks payable to Austria into his account, and withdrew funds that he gave to Bryan; 6) on December 22, 2017, he deposited the $157,243.26 bank check payable to Lincorn Forsight Construction Inc. to the Lincorn account at Santander Bank; 7) he deposited the Lincorn Forsight check at the direction of an individual he was introduced to by Bryan; and 8) Bryan paid him $1,000 to $2,000.

## CONCLUSION

29.    Based on my knowledge, training, and experience, and the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that GUILLAUME and GEORGES conspired to commit bank fraud, in violation of Title 18, United States Code, Section 1349.

Respectfully submitted,

Dominic Gross
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on July __8__ , 2019

DAVID H. HENNESSY
United States Magistrate Judge